BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE WILLIAM MURANO, COUNTY COUNSEL, COUNTY OF LASSEN, has requested an opinion on the following question:
In calculating the populations of cities for purposes of membership on the governing board of a county air pollution control district, are state prison inmates to be included in the calculations?
 CONCLUSION
In calculating the populations of cities for purposes of membership on the governing board of a county air pollution control district, state prison inmates are to be included in the calculations.
 ANALYSIS
The question presented for resolution concerns membership by city officials on the governing board of a county air pollution control district. (Health Saf. Code, §§40000-40131.)[1] In calculating the populations of cities for purposes of representation on the governing board, are state prisoners to be included in the calculations? We conclude that they are.
Generally speaking, a county air pollution control district exists in each county. (§ 40002.) Within their respective jurisdictions, these local authorities have the primary responsibility for the control of air pollution from sources other than emissions from motor vehicles, the latter being the responsibility of the State Air Resources Board. (§ 40000; see 76 Ops.Cal.Atty.Gen. 11 (1993).) Section 40001 provides:
 "(a) Subject to the powers and duties of the state board, the districts shall adopt and enforce rules and regulations to achieve and maintain the state and federal ambient air quality standards in all areas affected by emission sources under their jurisdiction, and shall enforce all applicable provisions of state and federal law.
 "(b) The district rules and regulations may, and at the request of the state board shall, provide for the prevention and abatement of air pollution episodes which, at intervals, cause discomfort or health risks to, or damage to the property of, a significant number of persons or class of persons.
 "(c) Prior to adopting any rule or regulation to reduce criteria pollutants, a district shall determine that there is a problem that the proposed rule or regulation will alleviate and that the rule or regulation will promote the attainment or maintenance of state or federal ambient air quality standards.
 "(d) (1) The district rules and regulations shall include a process to approve alternative methods of complying with emission control requirements that provide equivalent emission reductions, emissions monitoring, or recordkeeping.
 "(2) A district shall allow the implementation of alternative methods of emission reduction, emissions monitoring, or recordkeeping if a facility demonstrates to the satisfaction of the district that those alternative methods will provide equivalent performance. Any alternative method of emission reduction, emissions monitoring, or recordkeeping proposed by the facility shall not violate other provisions of law.
 "(3) If a district rule specifies an emission limit for a facility or system, the district shall not set operational or effectiveness requirements for any specific emission control equipment operating on a facility or system under that limit. Any alternative method of emission reduction, emissions monitoring, or recordkeeping proposed by the facility shall include the necessary operational and effectiveness measurement elements that can be included as permit conditions by the district to ensure compliance with, and enforcement of, the equivalent performance requirements of paragraphs (1) and (2). Nothing in this subdivision limits the district's authority to inspect a facility's equipment or records to ensure operational compliance. This paragraph shall apply to existing rules and facilities operating under those rules."
The statute requiring our analysis and interpretation is section40100.5, establishing the composition of county district governing boards. Section 40100.5 states:
 "(a) On and after July 1, 1994, the membership of the governing board of each county district, including any district formed on or after that date, shall include (1) one or more members who are mayors, city council members, or both, and (2) one or more members who are county supervisors.
 "(b) The number of those members and their composition shall be determined jointly by the county and the cities within the district, and shall be approved by the county, and by a majority of the cities which contain a majority of the population in the incorporated area of the district.
 "(c) The governing board shall reflect, to the extent feasible and practicable, the geographic diversity of the district and the variation of population between the cities in the district.
 "(d) The members of the governing board who are mayors or city council members shall be selected by the city selection committee. The members of the governing board who are county supervisors shall be selected by the county.
 "(e) This section does not apply to any district in which the population of the incorporated area of the county is 35 percent or less of the total county population, as determined by the district on June 30, 1994, or to a county district having a population of more than 2,500,000 as of June 30, 1990.
 "(f) If a district fails to comply with subdivisions (a) and (b), the membership of the governing board shall be determined as follows:
 "(1) In districts in which the population in the incorporated areas represents between 36 and 50 percent of the total county population, one-third of the members of the governing board shall be mayors or city council members, and two-thirds shall be county supervisors.
 "(2) In districts in which the population in the incorporated areas represents more than 50 percent of the total county population, one-half of the members of the governing board shall be mayors or city council members, and one-half shall be county supervisors.
 "(3) The number of those members shall be determined as provided in subdivision (b) and the members shall be selected pursuant to subdivision (d).
 "(4) For purposes of paragraphs (1) and (2), if any number which is not a whole number results from the application of the term `one-third,' `one-half,' or `two-thirds,' the number of county supervisors shall be increased to the nearest integer, and the number of mayors or city council members decreased to the nearest integer."
Calculating the populations of cities within a county air pollution control district concerns several aspects of section40100.5. First, "a majority of the cities which contain a majority of the population in the incorporated area of the district" are given approval authority over the composition of the governing board when the board's membership has been "determined jointly by the county and the cities within the district." (§40100.5, subd. (b).) Second, the population of cities is to be considered in determining the composition of the governing board so that it will "reflect, to the extent feasible and practical, . . . the variation of population between the cities in the district." (§40100.5, subd. (c).) Third, the cities in the district will have no representation on the governing board if "the population of the incorporated area of the county is 35 percent or less of the total county population. . . ." (§ 40100.5, subd. (e).) In such case, the county board of supervisors will serve as the governing board. (§ 40100.) Finally, if the county and the cities within the district cannot agree upon the composition of the governing board, "one-third of the members of the governing board shall be mayors or city council members" if "the population in the incorporated areas represent between 36 and 50 percent of the total county population." (§ 40100.5, subd. (f)(1).) One-half of the members "shall be mayors or city council members" if "the population in the incorporated areas represent more than 50 percent of the total county population." (§40100.5, subd. (f)(2).)
Accordingly, whether state prison inmates are to be included in calculating the populations of the cities within a county air pollution control district may affect (1) whether the cities have any representation on the governing board, (2) the number of city representatives on the governing board, and (3) which cities will be represented on the governing board.
In analyzing the provisions of section 40100.5, we note the related provisions of section 40100.7, which state:
 "(a) Section 40100.5 shall not apply to a county district if each city in the county consents, by the adoption of an ordinance or resolution, to the exclusion of the county district from the requirements of Section 40100.5.
 "(b) Within 60 days from the date of the adoption or resolution by all cities in the county to exclude the county district from the requirements of Section 40100.5, if requested by a majority of the cities in the county, the county district shall establish an advisory committee consisting of a mayor, or city council member, from each city in the county. The members shall be selected by the city selection committee.
 "(c) Subdivision (a) shall become inapplicable, and Section 40100.5 shall apply, if, at any time after the condition prescribed in subdivision (a) has been met, a majority of the cities which contain a majority of the population in the incorporated areas of the county, as established by the most recent census data, have adopted resolutions requesting the application of Section 40100.5."
While section 40100.5 does not expressly indicate how the population figures are to be calculated, section40100.7 does so for purposes of its provisions. Subdivision (c) of section 40100.7 refers to "a majority of the cities which contain a majority of the population in the incorporated areas of the county, as established by the most recent census data. . . ." We find no basis for treating differently the population calculations under the provisions of sections40100.5 and 40100.7, since the two statutes are interrelated. "[W]e interpret a statute in context, examining other legislation on the same subject, to determine the Legislature's probable intent. [Citations.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627,642.)
Consequently, when calculating its census data, where does the United States Department of Commerce, Bureau of the Census, place state prisoners? "Inmates of correctional institutions, including prisons, jails, detention centers, or halfway houses [are] [c]ounted at the institution." (U.S. Dept. of Commerce, Facts About Census 2000 Residence Rules, www.census.gov.) Such placement of prisoners at the correctional facility is consistent with the federally established concept of "usual residence" for census data, reflecting the place where the person lives and sleeps most of the time. (Ibid.) Accordingly, construing sections40100.5 and 40100.7 together, we find that state prison inmates are to be counted in the populations of the cities in which the state prisons are located.
We recognize that the Legislature may direct that state prisoners be excluded from the calculations performed pursuant to section40100.5 based upon a legitimate governmental interest. For example, state prisoners may be excluded for purposes of redistricting county supervisorial districts. (74 Ops.Cal.Atty.Gen. 162 (1991).)
Here, in contrast, no exclusion of prisoners from the population calculations has been expressed or implied in the Legislature's attempt to give cities a voice in enforcing air pollution control standards. When section 40100.5 was enacted (Stats. 1993, ch. 961, § 2), the purpose of the legislation was explained in the committee report of the Assembly Committee on Natural Resources for its hearing on March 29, 1993, as follows:
 "The League of California Cities has sponsored this measure to insure that they have an equal role with counties in air quality management. The League believes that the present composition of many air district boards, which includes only county members, is an antiquated and unfair system that denies cities a voice and gives counties indirect land use authority. The League believes that the probable direction of future air quality planning, which may involve indirect sources and land use planning, further demonstrates the need for city involvement in air quality decisions."
Excluding state prisoners from the populations of cities where they are located would not promote the purpose of section40100.5 to give cities "an equal role with counties in air quality management."
Finally, we note that state prisons may impact air quality in their areas by constituting either a "stationary" or "indirect" source of air pollution. (See 76 Ops.Cal.Atty.Gen., supra, at pp. 12-15.)
We conclude that in calculating the populations of cities for purposes of membership on the governing board of a county air pollution control district, state prison inmates are to be included in the calculations.
[1] All undesignated section references are to the Health and Safety Code.